23-11742

IN THE

# United States Court of Appeals

## FOR THE ELEVENTH CIRCUIT

◆◆◆

MADISON TITLE AGENCY, LLC,

*Plaintiff-Appellant,*

—v.—

BANK OF AMERICA, N.A.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

## BRIEF FOR PLAINTIFF-APPELLANT
## [REDACTED]

GEORGE A. KOENIG
KOENIG LAW GROUP, P.C.
1718 Peachtree Street, Suite 599
Atlanta, Georgia 30309
(678) 539-6171

*Attorneys for Plaintiff-Appellant*

*Madison Title Agency, LLC v. Bank of America, N.A.*
11th Circuit Case No.: 23-11742-H

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

In compliance with Federal Rule of Appellate Procedure 26.1 and 28(a), and Eleventh Circuit Rules 26.1-1, 26.1-2, 26.1-3 and 28-1(b), the following is a complete list, upon information and belief, of all parties that have an interest in the outcome of this appeal.

1. BAC North America Holding Company - owns Bank of America, N.A. (Upon information and belief)

2. Bank of America, N.A.- Appellee

3. Bank of America Corporation (BAC) - owns NB Holdings Corporation (Upon information and belief)

4. Berkshire Hathaway Inc. (BRK) - owns greater than 10% of BAC (Upon information and belief)

5. Burbine, Jennifer, Counsel for Appellee, Bank of America, N.A

6. Calvert, Victoria, Judge, United States District Court

7. Conner, Rick, Counsel for Appellee, Bank of America, N.A

8. Fitzgerald, Matthew, Counsel for Appellee, Bank of America, N.A

9. JREZ, LLC - owns Madison Commercial Real Estate Services, LLC

10. Koenig, George, Counsel for Appellant, Madison Title Agency, LLC

*Madison Title Agency, LLC v. Bank of America, N.A.*
11th Circuit Case No.: 23-11742-H

11.  Koenig Law Group. P.C., Counsel for Appellant, Madison Title

12.  Madison Title Agency, LLC, Appellant

13.  Madison Commercial Real Estate Services, LLC – owner of Madison

Title Agency, LLC, Appellant

14.  McGuire Woods LLP, Counsel for Appellee, Bank of America, N.A.

15.  NB Holdings Corporation owns BAC North America Holding

Company which owns Bank of America, N.A.

16.  Rosenbaum, Joseph (member of JREZ, LLC)

17.  Zaks, Elliott S. (member of JREZ, LLC)

Bank of America, N.A. is wholly owned by BAC North America Holding Company ("BACNAH"). BACNAH is a direct, wholly owned subsidiary of NB Holdings Corporation ("NB Holdings"). NB Holdings is a direct, wholly owned subsidiary of Bank of America Corporation. Bank of America Corporation is a publicly held company whose shares are traded on the New York Stock Exchange (NYSE: BAC) and has no parent corporation. Based on the U.S. Securities and Exchange Commission Rules regarding beneficial ownership, Berkshire Hathaway Inc., 3555 Farnam Street, Omaha, Nebraska 68131, beneficially owns greater than 10% of Bank of America Corporation's outstanding common stock.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Oral argument is warranted in this case because it raises important legal issues regarding the scope of Uniform Commercial Code Article 4A, and specifically, its application to payment orders involving name mismatches ███████████ ████████████████████████████ to prevent losses to victims of Business Email Compromise and similar scams.

# TABLE OF CONTENTS

PAGE

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT............................................... C-1

STATEMENT REGARDING ORAL ARGUMENT ........................... i

TABLE OF CONTENTS ..................................................... ii

TABLE OF CITATIONS & AUTHORITIES................................. iii

JURISDICTIONAL STATEMENT............................................ v

STATEMENT OF ISSUE ON APPEAL ..................................... v

STATEMENT OF THE CASE................................................ 1

    A. STATEMENT OF FACTS ............................................... 1

    B. PROCEDURAL HISTORY ............................................. 4

    C. RULING PRESENTED FOR APPEAL ............................... 5

SUMMARY OF THE ARGUMENT .......................................... 5

ARGUMENT AND CITATION OF AUTHORITIES......................... 8

    I. STANDARD OF REVIEW.............................................. 8

    II. THE BANK IS LIABLE UNDER UCC ARTICLE 4A-207
       BECAUSE IT HAD ACTUAL KNOWLEDGE OF THE
       NAME MISMATCH .................................................... 9

CONCLUSION............................................................... 16

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7) ................ 18

CERTIFICATE OF SERVICE ............................................... 19

# <u>TABLE OF CITATIONS & AUTHORITIES</u>

PAGE(S)

**Cases**

*Bates v. JPMorgan Chase Bank, NA*,
    768 F.3d 1126 (11th Cir. 2014) ............................................... 8

*Fed. Ins. Co. v. NCNB Nat. Bank of N. Carolina*,
    958 F.2d 1544 (11th Cir. 1992) ............................................... 9

*Henry v. AG*,
    45 F.4th 1272 (11th Cir. 2022) ............................................... 8

*Perini Corp. v. First National Bank*,
    553 F.2d 398 (5th Cir.1977) ................................................... 9

*Peter E. Shapiro, P.A. v. Wells Fargo Bank, N.A.*,
    95 F. App'x 741 (11th Cir. 2019) ................................... 14, 15

*U.S. Fid. & Guar. Co. v. Fed. Rsrv. Bank of New York*, 620 F. Supp.
    361 (S.D.N.Y. 1985), *aff'd,* 786 F.2d 77
    (2d Cir. 1986) ...................................................................... 9

**Statutes**

O.C.G.A. § 11-1-202(b) ........................................................ 1

O.C.G.A. § 11-1-202(f)..................................................... 11, 12

O.C.G.A. § 11-4A-207(b)(2).............................................. 10, 11

U.C.C. Article 4A ........................................... 6, 7, 10, 14, 15

U.C.C. § 4A-207 ........................................... 9, 10, 11, 15

**Rules**

31 CFR 103.121 .................................................................. 1

Fed. R. Civ. P. 56(c) .......................................................... 8

**Other Authorities**

https://www.bankofamerica.com/content/documents/security/
    business_email_compromise.pdf..............................................  4

Paul S. Turner, "The UCC Drafting Process and Six Questions About
    Article 4A: Is There A Need for Revisions to the Uniform Funds
    Transfer Law?" 28 Loyola Law Review 351, 351 (1994) ....................  15

## JURISDICTIONAL STATEMENT

Diversity jurisdiction exists under 28 U.S.C. § 1332(a)(1) because the ultimate owners of Appellant Madison Title Agency, LLC ("Appellant" or "Madison"), through intervening LLCs, are citizens of New Jersey and Appellee Bank of America, N.A. ("Appellee" or "the Bank") is a citizen of North Carolina. This Court has appellate jurisdiction under 28 U.S.C. §§ 1291 and 1294(1) because this case involves a final and reviewable decision of the District Court for the Northern District of Georgia entered on April 21, 2023. Doc 87, 88. Madison noticed this decision for appeal on May 22, 2023. Doc 89. The appeal is from a final order or judgment that disposes of all the parties' claims.

## STATEMENT OF ISSUE ON APPEAL

The District Court erred by granting summary judgment to Appellee Bank after it accepted a UCC Article 4A payment order containing a name mismatch on behalf of its customer who was running a business email compromise scam on Appellant, the victim-originator of the order, where Appellant showed that the Bank knew that ███████████████████████████████████████████ ███ ████ ██ ████ ███ █████ ██████ ████ █████ ███ ██ ████ would have prevented the loss.

## STATEMENT OF THE CASE

### A. STATEMENT OF FACTS

The Bank is a chartered national bank regulated by the Office of the Comptroller of the Currency and is responsible for implementing a federal Customer Identification Program, also known as Know Your Customer, as well as verification procedures under 31 CFR 103.121. In June 2019 the Bank opened a new checking account for a customer in the name of Kast Trans, LLC, Account No. XXXX XXXX 7308 (hereinafter, "Account 7308"). Doc 62 - Pg 35. Kast Trans, LLC was the name of a criminal front operation run by a professional scammer. Doc 53-1 - Pg 1. For a few months the scammer funded the Bank Account with two counter credits before sending most of those funds to China using wire transfers. Doc 62 – Pg 60.

Thereafter, the Bank's customer targeted Madison with a BEC scheme. On September 18, 2019 Madison unwittingly sent a wire transfer to the Bank in the amount of $368,948.75 with instructions that the funds be deposited into the account "RoundPoint Kast Trans, LLC," Account 7308. Doc 62 - Pg 106-108.

The Bank had ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

1





In the months that followed the September 18, 2019 wire transfer the Bank's

██████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████

The Bank understands in depth what it describes as the "Growing Threat" of

BEC schemes and advertises that it works "across the globe" "24/7 to keep data and

information safe."[1]

The Bank accepted the wire and deposited it into the Kast Trans, LLC account.

Doc 62 – Pg 107-108. Thereafter, the Bank's customer absconded with the funds.

Doc 53-1 - Pg 1. Discovery in this case shows that there are genuine issues of

material fact and summary judgment should be denied.

## B. PROCEDURAL HISTORY

Madison filed this action on July 10, 2020 in the Superior Court of Gwinnett

County, Georgia against Bank of America Corporation ("BAC"). Doc 1-1. On

September 4, 2020 BAC removed the action to the District Court for the Northern

District of Georgia based upon diversity jurisdiction, Doc 1, and thereafter filed its

---

[1] *See* https://www.bankofamerica.com/content/documents/security/business_email_compromise.pdf

responsive pleadings. On November 27, 2020 Madison substituted the Bank as party-defendant in place of BAC, Doc 11, and thereafter, on December 18, 2020, the Bank filed its responsive pleadings. Doc 15.  On March 31, 2021 the District Court entered a Confidentiality Agreement and Protective Order involving provisions of confidentiality regarding discovery and the use of information designated confidential. Doc 25.

On April 6, 2022 the Bank filed its Motion for Summary Judgment, Doc 55, On May 9, 2022 Madison filed its Response, Doc 62.

### C. RULING PRESENTED FOR APPEAL

On April 21, 2023 the District Court denied Madison's motion to strike, granted the Bank's motion for summary judgment, and dismissed the action. Doc 87, 88. Specifically, the District Court ruled that nothing in the facts presented by Madison regarding "the Bank's system raises a reasonable inference that the Bank had actual knowledge of the mismatch *in this case*." Doc. 87 at 6.

### SUMMARY OF THE ARGUMENT

The District Court erred by granting the Bank's motion for summary judgment. The Bank opened an account for its customer, Kast Trans, LLC, which was a front for a criminal operation. Shortly thereafter the Bank's customer targeted Madison with a Business Email Compromise (BEC) scheme. Unwittingly, Madison sent a wire transfer to the Bank with instructions that the funds be deposited into the

account of a different entity, RoundPoint Kast Trans, LLC. The Bank ███████

████████████████████████████████████████████████████████████████

and despite the material name mismatch (*i.e.*, RoundPoint Kast Trans, LLC v. Kast Trans, LLC), it accepted the wire and erroneously deposited the funds into the criminal's Kast Trans, LLC account.

UCC Article 4A prohibits a bank from accepting a wire transfer where it has actual knowledge of a name mismatch. Through discovery in this case the Bank now admits, perhaps for the first time, that ██████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ Thus, there is a genuine issue of material fact whether the Bank had actual knowledge of the obvious name mismatch.

UCC Article 4A asks not which party is at fault, but rather which party is in the best position to avoid the loss. The Bank had the customer relationship with the criminal. Bank employees knew the Bank's ████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████. The Bank is the only party with full visibility of its own customer, ████████████████, the wire instructions and the obvious name mismatch. The scammer was operating right under its own nose. Thus, the Bank was the party in the best position to avoid this $368,948.75 loss. The Bank admits that ██████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████

UCC Article 4A completely disregards questions of negligence by the sender.

The loss avoidance policy of UCC Article 4A serves the public interest. Here, the Bank has a Know Your Customer duty and has ███████████████████████. The Bank also is the only party who can match the wire instructions to its own customer. Thus, the public interest compels that the Bank take responsibility for this loss on the specific facts of this case.

The Bank's liability is made all the clearer by its dogged demands that ██ ███████████████████████████████. The scammers already know ██████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████  ██  ██████

████████████████████████████████████

## ARGUMENT AND CITATION OF AUTHORITIES

### I. STANDARD OF REVIEW.

This Court reviews de novo a District Court's grant of summary judgment, viewing the evidence and all factual inferences in favor of the non-moving party. *Henry v. AG*, 45 F.4th 1272, 1280 (11th Cir. 2022). Summary judgment should not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126 (11th Cir. 2014). Summary judgment is inappropriate where the evidence is subject to multiple inferences that raise legitimate questions of material fact sufficient for a jury to find for the non-movant. *Id.* at 1396 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (holding that there is a genuine issue of material fact "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party'").

## II.   THE BANK IS LIABLE UNDER UCC ARTICLE 4A-207 BECAUSE IT HAD ACTUAL KNOWLEDGE OF THE NAME MISMATCH.

The purpose of the UCC is loss prevention, and not fault-finding, and this purpose is fulfilled by placing responsibility on the party in the best position to prevent the loss. "The UCC, however, for the most part does not look at actual fault. Instead, it places responsibility on the party which ordinarily would be in the best position to prevent the loss." *U.S. Fid. & Guar. Co. v. Fed. Rsrv. Bank of New York*, 620 F. Supp. 361, 370 (S.D.N.Y. 1985), *aff'd,* 786 F.2d 77 (2d Cir. 1986). "Such a result accomplishes two purposes: first, it increases the efficiency and fraud-resistance of the banking system by placing upon those best able to guard against it the responsibility for preventing fraud, and, second, it speeds the resolution of disputes by establishing clear rules of liability which do not depend heavily upon the specific facts of individual instances of fraud." *Id*. "Therefore, while the purpose of these rules is, as with tort law, to apportion loss, they are guided not by the policy which guides tort loss apportionment—fairness in the circumstances—but by the policies which shape the UCC—the promotion of efficient and predictable commerce." *Id*. *See Perini Corp. v. First National Bank,* 553 F.2d 398, 405–06 (5th Cir.1977) (describing this policy as promoting "finality"). *Cf. Fed. Ins. Co. v. NCNB Nat. Bank of N. Carolina*, 958 F.2d 1544, 1550 (11th Cir. 1992) ("the provisions of the UCC that Florida has adopted determine a bank's liability to its depositor for

9

improper payment of the depositor's checks, and that under those provisions, if the bank acted negligently, the depositor's own negligence is irrelevant and cannot reduce the amount of the depositor's damages").

The Bank was the party in the best position to prevent this scam, and was in the best position by a good measure. It had the duty to implement Know Your Customer policies. It received the wire transfer instructions, which clearly identified the intended beneficiary by a different name. It also had ████████████ capable of ████████████ and defeating the scam. Unlike the Bank, Madison had no access to the name on the bank account or the information needed to conduct a name mismatch review.

UCC Article 4A states in part: "If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons…[and] the beneficiary's bank pays the person identified by name or knows that the name and number identify different persons, no person has rights as beneficiary except the person paid by the beneficiary's bank if that person was entitled to receive payment from the originator of the funds transfer. If no person has rights as beneficiary, acceptance of the order cannot occur." O.C.G.A. § 11-4A-207(b)(2). This subsection applies where the beneficiary bank "knew about the conflict between the name and number and nevertheless paid" the wrong person. *See* Official Comment to UCC

10

4A-207 (Under subsection (b)(2) acceptance of the payment order "did not occur because there is no beneficiary of that order... Thus, Beneficiary's Bank takes the loss.") In these cases the beneficiary bank "takes the loss." *Id*.

Here, Madison was the originator of the funds and directed to the Bank a payment order, which payment order identified the beneficiary both by name and by an identifying bank account number. The name was RoundPoint Kast Trans, LLC and the account number was Account 7308. The Bank is the beneficiary bank who received the payment order. The Bank accepted the order and paid the funds to its customer, Kast Trans, LLC. Thus, the Bank did not pay the person identified by name. Instead the Bank paid Kast Trans, LLC, who was not a person entitled to receive payment from Madison. Doc 53-1 - Pg 1.

This leaves only the issue of the Bank's knowledge of the name mismatch – if the Bank knew the name in the instructions did not match its customer's name, then acceptance of the order never occurred and the Bank "takes the loss."

The Georgia UCC defines knows and knowledge to mean "actual knowledge." O.C.G.A. § 11-1-202(b). In addition, "Knowledge of an organization shall be effective for a particular transaction from the time it is brought to the attention of the individual conducting that transaction and, in any event, from the time it would have been brought to the individual's attention if the organization had exercised due diligence." O.C.G.A. § 11-1-202(f). "An organization exercises due

diligence if it maintains reasonable routines for communicating significant information to the person conducting the transaction and there is reasonable compliance with the routines." *Id*. "Due diligence does not require an individual acting for the organization to communicate information unless the communication is part of the individual's regular duties or the individual has reason to know of the transaction and that the transaction would be materially affected by the information." *Id*.

Here, through discovery in this case the Bank now admits that its employees knew at the time the Bank accepted Madison's wire that ███████████████

███████████████████████████████████████

Bank employees also knew that the Bank accepted wired funds that ███████

███████████████████████████████████████ Bank

employees also knew that ███████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████ The Bank knew

that ███████████████████████████ In fact, the Bank admits that it knows ██████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████

The Bank's actual knowledge is made all the clearer by its ███████████

███████████████████████████ The scammers already know ██

███████████████████████████████████████████████████

███████████████████████████████████████████████████

The Bank should not get to keep secret its ████████████████████

████████████████ when it serves only to protect the tradecraft of professional

scammers at the expense of their victims. Thus, the Bank's "confidential"

designations of █████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████

In addition, the Bank ████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████ In addition, the Bank

acknowledges that the wire transfer instructed the payment of the funds to a different

13

account name, RoundPoint Kast Trans, LLC, and that it paid the funds to a "scammer" with a different name. Doc 53-1 – Pg 1.

This case illustrates why Article 4A liability should arise on these facts in contrast to the facts found in this Court's <u>unpublished</u> <u>decision</u> in *Peter E. Shapiro, P.A. v. Wells Fargo Bank, N.A.*, 95 F. App'x 741 (11th Cir 2019). First, ██

███████████████████████████████████████████████████████

████████████████ *See Shapiro*, 795 Fed. Appx. at 748 ("by implementing and using an automated funds transfer system that ignores potential name mismatches"). ██

███████████████████████████████████████████████████████

███████████████ In fact, ████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

Second, ████████████████████████████████████████████

██████████ *Id*. at 749, ████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████

██ ████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████ Article 4A's stated purpose: "If payment orders can be handled on an automated basis there are substantial economies of operation and the possibility of clerical error is reduced." U.C.C. § 4A-207, cmt. 2. This fact is unsurprising because Article 4A was approved by its sponsors, the National Conference of Commissioner on Uniform State Laws (NCCUSL) and the America Law Institute (ALI) in 1989 and enacted in forty-nine states (including Georgia) and the District of Columbia within the following five years. *See* Paul S. Turner, "The UCC Drafting Process and Six Questions About Article 4A: Is There A Need for Revisions to the Uniform Funds Transfer Law?" 28 Loyola Law Review 351, 351 (1994). It is an old law from a completely different era coming into existence before the internet, search engines, algorithms, wireless and satellite connectivity, on-line banking, smart phones and other advances in technology changed everything. Thus, on the facts of this case there is evidence creating a genuine issue of material fact that name mismatches can be caught and resolved – generate an exception and be rejected – with human intervention or without any human intervention whatsoever.

Third, this case has significant, material evidence that *Shapiro* did not have. *See Shapiro* at 743 ("We assume the parties are familiar with the factual and

procedural background of this case and recount that background here only to the extent necessary to provide context for our decision.") Through discovery in this case the Bank now admits, that ██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████ Thus, these facts, none of which were presented in *Shapiro*, create genuine issues of material fact in this case.

## CONCLUSION

The District Court erred in granting summary judgment to the Bank because there is a genuine issue of material fact whether the Bank had actual knowledge of the obvious name mismatch.

WHEREFORE, Appellant respectfully requests that this Court reverse the District Court's Order and remand for a trial on the merits of Appellant's claims.

Respectfully submitted this 24th day of July, 2023.

*/s/ George A. Koenig*
George A. Koenig
GA Bar No. 427626

KOENIG LAW GROUP, P.C.
1718 Peachtree Street NW, Suite 599
Atlanta, GA 30309
678.539.6171
george@koeniglawgroup.com

*Counsel for Plaintiff-Appellant Madison
Title Agency, LLC*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)</u>

**Certificate of Compliance with Type-Volume Limit, Typeface Requirements and Type-Style Requirements**

**1. Type-Volume**

☒    This document complies with the word limit of FRAP 37(a)(7)(B)(i) because, excluding the parts of the document exempted by FRAP 32(f) this document contains 4164 words.

**or**

☐    This brief complies with the line limit of FRAP because, excluding the parts of the brief exempted by FRAP 32(f) and _____, this brief uses a monospaced typeface and contains _____ lines of text.

**2. Typeface and Type-Style**

☒    This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

Dated: July 24, 2023.

> */s/ George A. Koenig*_____
> George A. Koenig
> GA Bar No. 427626
> KOENIG LAW GROUP, P.C.
> 1718 Peachtree Street NW, Suite 599
> Atlanta, GA 30309
> 678.539.6171
> george@koeniglawgroup.com
>
> *Counsel for Plaintiff-Appellant Madison Title Agency, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that:

(i)    a true and correct redacted copy of the above and foregoing *APPELLANT'S BRIEF* was electronically filed with the Clerk of the U.S. Court of Appeals for the Eleventh Circuit which served an electronic copy on each counsel of record; and

(ii)    a true and corrected unredacted copy of the above and foregoing *APPELLANT'S BRIEF* was submitted in paper format in a seal envelope which contained a conspicuous notation that the enveloped contains "DOCUMENTS UNDER SEAL" or substantially similar language, and served on counsel of record via email to the following:

> Matthew A. Fitzgerald
> McGuireWoods LLP
> 800 East Canal Street
> Richmond, VA 23219-3916
> 804.775.4716 (Direct Line)
> mfitzgerald@mcguirewoods.com
>
> Jennifer R. Burbine
> McGuireWoods LLP
> Suite 2100, Promenade II
> 1230 Peachtree Street NE
> Atlanta, GA 30309
> jburbine@mcguirewoods.com

This 24th day of July, 2023.

19

*/s/ George A. Koenig*
George A. Koenig
GA Bar No. 427626
KOENIG LAW GROUP, P.C.
1718 Peachtree Street NW, Suite 599
Atlanta, GA 30309
678.539.6171
george@koeniglawgroup.com

*Counsel for Plaintiff-Appellant Madison Title Agency, LLC*